UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES of AMERICA ex rel.   )
STEPHEN A. JACKSON,                )
                                   )
            Petitioner,            )
                                   )
     v.                            )        No. 03 C 3150
                                   )
EDWIN R. BOWEN, Warden, Centralia  )        Judge Rebecca R. Pallmeyer
Correctional Institution,          )
                                   )
            Respondent.            )
                                   )

## MEMORANDUM OPINION AND ORDER

On May 7, 1999, Petitioner Stephen Jackson pleaded guilty to one count of armed robbery
in case number 98 C4 41074 ("Case One") and one count of armed robbery, one count of unlawful
vehicular manslaughter, and four counts of aggravated kidnapping in case number 98 C4 41075
("Case Two"). The State voluntarily dismissed a number of remaining counts, and Judge Frank
DeBoni of the Circuit Court of Cook County sentenced Petitioner to two 25-year terms of
imprisonment, to be served concurrently. The Illinois Appellate Court upheld this sentence on
direct appeal. (Order of the Illinois Appellate Court, *People v. Jackson*, No. 1-99-3270, June 4,
2001, Ex. D to Respondent's Brief, hereinafter Appellate Court Order.) The Illinois Supreme Court
denied Petitioner's petition for leave to appeal. (Order of the Illinois Supreme Court, *People v.
Jackson*, No. 92101, Oct. 3, 2001, App. to Petitioner's Brief, at 39.) Petitioner now seeks a writ of
habeas corpus under 28 U.S.C. § 2254, challenging his sentence on the grounds that: (1) his
access to the state appellate process was obstructed in violation of his Fourteenth Amendment due
process and equal protection rights; (2) his sentence violates equal protection; and (3) his sentence
violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). For the reasons discussed below, the
petition is denied.

## FACTUAL BACKGROUND

A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *Kuhlmann v. Wilson*, 477 U.S. 436, 441 (1986). The court therefore adopts the factual findings of the Illinois Appellate Court, as found in its unpublished June 4, 2001 opinion.

On August 5, 1998, Petitioner Stephen Jackson robbed Virginia Ferber, an elderly woman, at knifepoint in Oak Park, Illinois. (Appellate Court Order, at 5-6.) Ms. Ferber was not physically injured. Petitioner was apprehended less than one hour later, whereupon he admitted responsibility and signed a full, written confession. As a result of this incident, Petitioner was charged in a five-count information with one count of armed robbery, three counts of aggravated battery, and one count of aggravated unlawful restraint. While in custody, Petitioner was also charged with the armed robbery of a senior citizen on July 31, 1998 in Forest Park, Illinois. Petitioner also confessed to this crime, admitting that he entered the victim's car and robbed her at knifepoint. In this instance, too, the victim was not injured. Petitioner was charged in a nine-count information with armed robbery, four separate violations of the aggravated kidnapping statute, vehicular invasion, two separate violations of the kidnapping statute, and aggravated unlawful restraint.

After confessing to the crimes, Petitioner negotiated a plea. During a Rule 402 conference[1] held on December 15, 1998, the prosecutor offered, in exchange for a guilty plea to armed robbery in Case One, to recommend a sentence of 50 years imprisonment and to strike with leave to reinstate (SOL) the remaining counts. (Appellate Court Order, at 1-2.) In Case Two, the Assistant State's Attorney offered to strike the remaining counts in return for Petitioner's plea of guilty to armed robbery, vehicular invasion, and one count of aggravated kidnapping. (*Id.*) After Petitioner

---

[1]     Rule 402 governs guilty plea proceedings under Illinois law. Supreme Court Rule 402, 177 Ill. 2d R. 402.

asked for a lesser sentence in light of mitigating circumstances,[2] the trial court indicated that if he pleaded guilty to both cases, it would sentence him to two concurrent 25-year terms of imprisonment, with the defendant serving "one-for-one time," i.e., serving one-half of the sentence imposed.

On May 7, 1999, Petitioner entered a plea of guilty based upon the judge's indication that he would receive a 25-year sentence, but nevertheless requested that the court hold a sentencing hearing. The trial court initially balked at the idea of a sentencing hearing, questioning the purpose of such a hearing where an agreement to a negotiated guilty plea had already been reached. Defense counsel urged that the submission of mitigating and aggravating evidence could be relevant if his client filed a motion to reconsider his sentence, but Judge DeBoni observed that a defendant is not entitled to appeal a sentence imposed pursuant to a negotiated guilty plea. The judge cited *People v. Evans*, 174 Ill. 2d 320, 673 N.E.2d 244 (1996), and warned that "the Supreme Court says [that in order to appeal] from the finding of guilty, the sentence, or agreement, [a defendant pleading guilty pursuant to a negotiated plea] must do certain statutory things. And one of those things is filing a motion to reconsider, and a motion to withdraw the guilty plea." (Trial Transcript, May 7, 1999, at 9-11.) Defense counsel responded by alluding to a claimed statutory right to seek reconsideration of a criminal sentence, even where it was the product of a negotiated plea. Although counsel did not identify the statute at issue, this court presumes he was referring to Illinois Supreme Court Rule 605(b). In its then-existing form, that Rule provided that criminal defendants could preserve their appellate rights by filing either a motion to withdraw their guilty plea or a motion to reconsider their sentence within thirty days of sentencing: the Rule made no specific mention of any limits of appeal rights for defendants convicted pursuant to negotiated pleas.

---

[2]     Just what mitigating circumstances the defense offered at the December 15 proceeding is unclear, as there is no transcript. As indicated above, the court accepts the Illinois Appellate Court's rendition of the facts, including the substance of the December 15 negotiations.

Supreme Court Rule 605(b), ILCS S. Ct. R. 605(b).

After this exchange, the court admonished Petitioner of the possible sentences for his crimes, and advised him that, by pleading guilty, he was giving up certain rights. Petitioner acknowledged that he was aware of his rights, and that he was pleading guilty of his own free will, absent any promises or threats.

The State Attorney's then presented a stipulated factual basis for the plea. Regarding Case One, the parties stipulated that Virginia Ferber would testify, if called to do so, that after returning from the grocery store on August 5, 1998, she parked her car in her garage, whereupon Petitioner grabbed her and demanded money. (Appellate Court Order, at 5-6.) When Ferber saw his face, Petitioner donned a nylon mask and pulled out a wooden-handled knife with a 5 ½ inch blade. (Id. at 6.) Petitioner held the knife to the victim's throat, and in response to his demands, Ferber gave Petitioner her coin purse. Within fifteen minutes, Petitioner had been apprehended by the police and identified by Ferber at a "showup." (Id. at 6.) Ferber was 82 years old at the time of the incident. The parties also stipulated that, if called, Detective Paladines would testify that in response to a robbery call, he and his partner went to a parking lot and saw Petitioner, who matched the suspect description, sitting in a car. (Id.) With Petitioner's consent, the officers searched the car, recovering a wooden-handled knife with a 5 ½ inch blade and a dark nylon stocking cap. After being read his Miranda rights, Petitioner gave a statement admitting his involvement in the robbery. (Id.)

Regarding Case Two, the parties stipulated that, if called, Kathleen Russell would testify that on July 31, 1998, Petitioner jumped into her car as she was parking. (Id. at 6-7.) After she started screaming, Petitioner produced a knife with a 5 ½ inch blade and ordered her to drive. While she drove, Petitioner rifled through her purse and placed the knife to her throat "a couple of times." (Id.) Petitioner located Russell's ATM card and, with the knife at her throat, demanded

4

the PIN number. After taking her cash, credit cards, and driver's license, Petitioner directed Russell to pull over, got out of the car, and fled. Russell was not physically injured during the encounter. Five days later, Russell identified Petitioner in a lineup. (*Id.*) Russell was 81 years old at the time of the incident. (*Id.* at 6.)

Finding a factual basis for the guilty pleas, the court accepted the pleas and found defendant guilty of armed robbery in Case One, and of armed robbery, vehicular invasion, and one count of aggravated kidnapping in Case Two. (*Id.* at 8-9.) The State then dismissed the remaining counts.

Later that morning, the prosecutor and defense counsel again appeared before the trial court to discuss the impact of a recently enacted sentencing legislation.[3] From the transcript of this hearing, it appears that at the time of the conference at which the 25-year sentence was first proposed, the parties were under the impression that Petitioner would receive day-for-day good time credit, and thus would ultimately serve 50% of the 25-year sentence. In the interim, however, the passage of the Illinois Truth-in-Sentencing Act required that a defendant convicted of kidnapping serve 85% of his sentence. The prosecutor and defense counsel agreed that in order to ensure that Petitioner served only the term to which he had agreed, the State would drop the aggravated kidnapping charge so that the new law would not apply.[4] (App. to Petitioner's Brief, at 71-74.)

On June 11, 1999, the court convened a sentencing hearing. After the parties reminded the trial court that the State had agreed to dismiss the aggravated kidnapping charge, the court

---

[3]     Under the Illinois Truth-in-Sentencing Act, a person serving a sentence for aggravated kidnapping or aggravated vehicular hijacking shall receive no more than 4.5 days good conduct credit for each month of imprisonment. 730 ILCS 5/3-6-3(a)(2)(ii),(iii).

[4]     Under the new law, persons serving sentences for any crime not specifically enumerated in the Act receive one day of good conduct credit for each day of imprisonment. 730 ILCS 5/3-6-3(a)(2.1).

5

expressed puzzlement over Defendant's continued insistence on an evidentiary hearing. In particular, the court challenged defense counsel's contention that, after such a hearing, the court would be free to impose his sentence below the previously-agreed 25 years, but would not have the power to impose a longer sentence. The court characterized this as an attempt "to get two bites [at the apple]." (App. to Petitioner's Brief, at 14-15.) Nevertheless, after obtaining defense counsel's agreement that Defendant was entering into a negotiated guilty plea, the court agreed to hold a sentencing hearing. (Id. at 16-18.)

In that hearing, the police presented evidence of a number of prior incidents not appearing on Petitioner's criminal record, including an arrest for disorderly conduct in 1993, a 1995 fight in which defendant and four to six other men chanted gang slogans and kicked two men at a restaurant, and a 1995 arrest for battery and mob action. (Appellate Court Order, at 18-19.) The State also submitted a record of Petitioner's January 27, 1998 theft conviction. (Id. at 19.) In addition, the State presented a pre-sentencing report, which revealed that Petitioner had begun smoking marijuana at age 16, and in the previous five years had smoked approximately half an ounce of marijuana per day. (App. to Petitioner's Brief, at 300.) The report also revealed that Petitioner had been sexually abused by his older brother from the age of six to ten. (Id.)

In mitigation, Petitioner's father, a minister, asked the court to reconsider the sentence in light of his son's background and potential for rehabilitation. (Id.) Petitioner's father also introduced his family, including his wife, who had worked for ten years with Circle Urban Ministries, a religious social services organization, and his five children, who include a teacher at Oak Park High School, an office worker, and an employee of a group home. (Trial transcript, June 11, 1999, at 41-47.) Georgia Fallis, Petitioner's neighbor, testified as a character witness, recounting Petitioner's politeness and willingness to help her father with yardwork. (Id. at 48-50.) Similarly, Sandra Chetham, whose niece dated Petitioner, testified that he was a "very mannerly young man,"

who was always polite and helpful, in addition to being "caring" and "spiritual." (*Id.* at 50-53.)

The defense also called a clinical psychologist who had conducted a forensic evaluation of Petitioner. The psychologist testified that Petitioner suffered from severe depression, poor self-esteem, and guilt, but had no antisocial personality disorder. (*Id.* at 59-61.) Testing showed that Petitioner was "needy" and had paranoid personality features, but no aggressiveness. (*Id.* at 60.) The psychologist also testified that Petitioner's drug use was likely a reaction to his depression, which stemmed from regular incidents of the molestation by his older brother. (*Id.* at 59.) The court declined to admit additional evidence, including the psychologist's written report and her opinion concerning the effect that incarceration would have on Petitioner's mental state. (*Id.* at 61-65.)

The defense attempted to introduce statistical evidence about sentences for persons convicted of armed robbery in the Fourth District during 1997-1999. (Appellate Court Order, at 20-21.) According to the Illinois Department of Corrections report offered by defense counsel, the average sentence for armed robbery in the Maybrook Courthouse[5] (where Petitioner was convicted) during that three-year period was 10.66 years, and the 25-year sentence proposed for Petitioner was the longest. (Petitioner's Brief, at 6.) The trial court refused to admit these documents, finding them irrelevant and "totally improper." (*Id.* at 21.)

Finally, Petitioner himself took the stand, apologizing to his victims, admitting responsibility, and testifying that since his incarceration he had found and accepted God into his life. (Appellate Court Order, at 21.)

At the end of the sentencing hearing, the prosecution and defense made summations. During its summation, the Assistant State's Attorney reviewed the facts of the case, emphasizing

---

[5]     The Maybrook Courthouse is located in Maybrook, Illinois and is home to the Fourth District of the Cook County Circuit Court, which handled Petitioner's criminal case. (Petitioner's Brief in Support of his Petition for Habeas Corpus, hereinafter Petitioner's Brief, at 21 n.6.)

the age of the victims and the defendant's criminal history, and noted that Petitioner was eligible for a sentence of up to 60 years in prison. (*Id.*) The defense began by citing case law allowing the admission of the Illinois Department of Corrections' sentencing report in determining the proper sentence, but was interrupted by Judge DeBoni with the words: "I'll tell you what. You agreed to the twenty-five. Your client agreed to twenty-five. If you want to go to trial, you didn't have to plead guilty. You would have the trial, and I would sentence him to what I think is appropriate after the trial." (Trial Transcript, June 11, 1999, at 100.) Defense counsel reiterated that Petitioner understood that he was pleading guilty, but asked the court to reconsider whether the 25-year sentence was appropriate in light of the mitigating circumstances. To this, the court asked again why Petitioner was pleading guilty if he felt the sentence was inappropriate, again offered to allow Petitioner to withdraw his guilty plea, and again accused defense counsel of trying to have it both ways by urging that the court should consider mitigating, but not aggravating, circumstances. (*Id.* at 100-04.)

The court then weighed the mitigating and aggravating circumstances and concluded that the case warranted a sentence of more than 25 years. (Trial Transcript, June 11, 1999, at 105.) Noting that the defendant "has demonstrated he's a risk to society," the court nevertheless sentenced defendant, consistent with the earlier negotiations, to two concurrent 25-year terms of imprisonment. (*Id.* at 108.) The judge then proceeded to issue an instruction, tracking the language of the then-current version of Illinois Supreme Court Rule 605(b):

> Mr. Jackson, you have the right to appeal from this finding of guilty, the sentence and judgment you were given today. To do that, to preserve your right to appeal and to appeal the finding of guilty and sentence and judgment entered against you, you must file within thirty days certain motions.
> They must be in writing, must be filed within thirty days of today's date, a motion to reconsider your sentence or motion to withdraw your guilty plea. Anything not contained in the written motions is waived or given up for appellate purposes.

(*Id.* at 109.) Petitioner asked the judge to repeat these instructions, and the judge reiterated that

his appeal rights could be preserved by filing within thirty days either: (1) a motion to withdraw his guilty plea or (2) a motion to reconsider his sentence. (*Id.* at 111-13.)

On July 7, 1999, Defendant did file a motion to reconsider his sentence. Although timely, the trial court stated that it would not consider the motion because Petitioner had not moved to withdraw his guilty plea. In support, Judge DeBoni cited Illinois Supreme Court case law establishing that a court may not entertain a motion to reconsider a sentence in the case of a negotiated plea unless the guilty plea is withdrawn. (Trial Transcript, Sept. 1, 1999, at 2, citing *People v. Linder*, 186 Ill. 2d 67, 708 N.E.2d 1169 (1999).)

Petitioner appealed his sentence to the Illinois Appellate Court, arguing that: (1) he has a right to appellate review of the length of his sentence; (2) the sentence violates the Illinois Constitution in that the trial court did not make rehabilitation an objective of the sentence imposed; (3) the sentence was excessive in comparison to other armed robbery sentences reviewed by the Appellate Court; (4) the sentence was excessive in light of the average sentence for armed robbery; (5) the sentence violates the Equal Protection and Due Process guaranties of the United States and Illinois Constitutions in that it was arbitrary, irrational, and "perhaps" based on racial discrimination; and (6) the trial court failed to conduct a fair and impartial sentencing hearing when it refused to admit or consider all of the psychological evidence offered by the defense. On June 4, 2001, the Appellate Court dismissed the appeal, concluding that by entering into a negotiated guilty plea, Petitioner had accepted the twenty-five year sentence and waived his right to appeal. Citing *Evans* and *Linder*, the court held that Petitioner was barred from challenging his sentence on appeal without first moving to withdraw his guilty plea. Appellate Court Order, at 36-37. In *Evans*, the Illinois Supreme Court held that a defendant who has entered into a negotiated guilty plea must move to withdraw his guilty plea before proceeding on appeal, even if the appeal only challenges the sentence, so that, if the appeal is successful, both parties are returned to the status quo.

*Evans*, 174 Ill. 2d at 335-36, 673 N.E.2d at 247-48. In *Linder*, the court extended this requirement to cases in which the defendant pleaded guilty in exchange for the State's dismissal of certain charges and a recommendation of a cap on his sentence. *Linder*, 186 Ill. 2d at 74, 708 N.E.2d at 1172. As Petitioner had never moved to withdraw his plea, the Appellate Court affirmed the trial court's dismissal of Petitioner's motion to reconsider his sentence.

Petitioner next a petition for rehearing with the Illinois Appellate Court, in which he argued that: (1) *Evans* and *Linder* did not bar review because his sentence violated the Illinois Constitution in that rehabilitation was not an objective of the sentence; (2) *Evans* and *Linder* had been misapplied; (3) the bar on judicial review of his sentence violated his rights under the Due Process Clause of the United States and Illinois Constitutions; (4) even if *Evans* and *Linder* apply to this case, Petitioner was improperly advised by the trial court that he could bring a motion to reconsider his sentence and is thus entitled to a remand; (5) the sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was decided while his appeal was pending. Two days later, the Appellate Court denied the petition without explanation. (Order of the Illinois Appellate Court, *People v. Jackson*, No. 1-99-3270, Ex. F to Respondent's Answer.)

Petitioner then made two separate filings to the Illinois Supreme Court. On August 1, 2002, he filed a petition for leave to appeal to the Illinois Supreme Court, raising all of the issues that he had presented in his original appeal. On August 3, 2001, he filed a motion for supervisory order under Illinois Supreme Court Rule 383.[6] In this motion, Petitioner noted that, after his sentencing hearing, the Illinois Supreme Court had amended its Rule 605(d) instruction. As described above, the Rule at the time of the sentencing hearing was arguably inconsistent with *Evans* and *Linder*, in which the Illinois Supreme Court held that defendants pleading guilty as part of a negotiated plea may not appeal their sentences without first moving to withdraw their pleas. Effective November

---

[6] A motion for a supervisory order under Rule 383 is merely a means of invoking the Illinois Supreme Court's supervisory authority. Illinois Supreme Court Rule 383, 155 Ill. 2d R. 383.

10

1, 2000, the Illinois Supreme Court amended Rule 605(d) to include the proper warnings to criminal defendants pleading guilty pursuant to a negotiated plea agreement. Since this amendment, Petitioner observed, the Illinois courts had been remanding similar cases where the defendants had been improperly admonished, to allow the defendants to be properly admonished and decide whether to move to withdraw their pleas. He urged that he was entitled to the same treatment. Both his petition for leave to appeal and motion for supervisory order were denied without comment. (Order of the Illinois Supreme Court, *People v. Jackson*, No. 92101, Ex. H to Respondent's Answer.)

Finally, Petitioner filed a petition for certiorari with the United States Supreme Court on March 4, 2002. In this petition, he argued that: (1) the Illinois waiver rule, requiring him to withdraw his guilty plea prior to appealing his sentence, extinguished his appellate remedy in violation of the Due Process and Equal Protection Clauses of Fourteenth Amendment; (2) the state courts' failure to remand his case after being improperly admonished of his appellate rights violated due process and equal protection; (3) his sentence violates *Apprendi*; and (4) his sentence violated his equal protection rights in that the court provided no explanation for the irrationally excessive sentence. The Supreme Court denied *certiorari* on May 13, 2002.

## DISCUSSION

### Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, a prisoner is entitled to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the United States Constitution. 28 U.S.C. § 2254. For claims that were adjudicated on the merits in state court, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

11

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1), (2).

In order to bring a petition for writ of habeas corpus in federal court, however, a petitioner must first: "(1) exhaust all remedies available in state courts . . . and (2) fairly present any federal claims in state courts first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citations omitted). A petitioner cannot proceed in federal court until he has given the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Moreover, it is not sufficient for the petitioner merely to have] been through a full round of state court appeals; rather, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276 (1971) (citations omitted); *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). In other words, the petitioner is required to set forth his claims "in such a way as to fairly alert the state court to any applicable [federal] constitutional grounds for the claim." *Bocian*, 101 F.3d at 469 (citations omitted). He must submit "both the operative facts and the controlling legal principles of a constitutional claim" before properly seeking habeas review in the federal courts. *Id.*

**Habeas Petition**

On May 12, 2003, Petitioner filed his petition for writ of habeas corpus in this court. In the petition, he alleges, first, that he was denied a meaningful review of his sentence in violation of the Due Process Clause of the Fourteenth Amendment. Specifically, Petitioner argues the Illinois courts extinguished his appellate rights without a knowing waiver in violation of due process. Petitioner also claims that his sentence violates the Equal Protection Clause of the Fourteenth

Amendment in that it is irrationally excessive and racially motivated.[7]

**Exhaustion and Procedural Default**

Respondent acknowledges that because Petitioner is precluded from pursuing any further remedies in the state courts, he has exhausted his state court remedies. (Respondent's Answer, at 8.) Under Illinois law, no additional proceedings regarding post-conviction relief may be held more than six months after the denial of leave to appeal or three years from the date of conviction, whichever is sooner, barring extraordinary circumstances. 725 ILCS 5/122-1(c). Respondent argues, however, that one of Petitioner's claims has been defaulted by his failure to give the state courts a full and fair opportunity to resolve them, and that the remaining two are not cognizable for federal habeas review. For these reasons, Respondent argues the petition should be denied. The court will address each of Petitioner's claims in turn.

I.    **Is Petitioner's Equal Protection Claim Before the Court?**

Petitioner claims his appellate rights were extinguished on the basis of an impermissible waiver theory in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. As explained above, Illinois case law establishes that a criminal defendant who pleads guilty as part of a negotiated plea agreement may not challenge the length of that sentence on direct appeal without first moving to withdraw the guilty plea. *See People v. Linder*, 186 Ill. 2d 67, 708 N.E.2d 1169 (1999); *People v. Evans*, 174 Ill. 2d 320, 673 N.E.2d 244 (1996). Petitioner claims, however, that this denial constituted an improper deprivation of his due process and equal protection rights because he never effectuated a valid waiver of his appellate rights.

---

[7]    In his initial habeas petitioner, Petitioner also claimed that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), insofar as the state law under which he was sentenced authorized his potential maximum sentence to be doubled due to the age of his victims. In his subsequent brief, however, Petitioner abandoned this claim in light of the Seventh Circuit's decision that *Apprendi* may not be applied retroactively in federal court. (Petitioner's Brief, at 24 n.8, citing *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002); *Dellinger v. Bowen*, 301 F.3d 758, 765 (7th Cir. 2002).

Respondent first argues that insofar as this claim is based on the Fourteenth Amendment's Equal Protection Clause, it was not fairly presented in the state courts, and thus has not been preserved for federal habeas review. In his state appeals, Petitioner made a due process challenge to the waiver rule, and also argued that his sentence violated both due process and equal protection. He did not, however, assert that the waiver rule itself violated equal protection.

In order to preserve a claim for federal habeas review, a petition must fairly present that claim to the state courts, thus providing the state courts with "a fair opportunity to apply constitutional principles and correct any constitutional errors committed by the trial court." *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting *U.S. ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir. 1984)). Although courts will "avoid hypertechnicality," *Verdin*, 972 F.2d at 1474, the petitioner must present "the operative facts and legal theory on which his claim is based," in order to alert the state court to the federal nature of the claim and allow the state court the opportunity to adjudicate the federal issue. *Id.* (citing *Picard*, 404 U.S. at 277-78). The Seventh Circuit has employed a four-part framework that considers whether a petitioner's state appeal: (1) relied on pertinent federal cases employing constitutional analysis; (2) relied on state cases applying constitutional analysis to a similar factual situation; (3) asserted the claim in such particular terms as to call to mind a specific constitutional right; or (4) alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Verdin*, 972 F.2d at 1473-74 (quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir. 1982)); *see also Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (employing this four-part test). None of the four factors are dispositive; a court must examine the specific facts of each case. *Id.*

In his state appeals, Petitioner argued that the Illinois state waiver rule was unconstitutional, but couched his argument solely in terms of due process. He nevertheless argues that he has satisfied the "fair presentment" requirement. Noting that "[e]xhaustion requires only that the

substance of the federal claim be fairly presented," Petitioner argues that the state had an opportunity to address the equal protection issue despite his failure to explicitly raise it because the due process and equal protection analysis converge in the Supreme Court's analysis of a defendant's right of appeal. (Petitioner's Feb. 17, 2004 Brief, at 23.) Indeed, the Court has explicitly acknowledged this convergence: "We observe first that the Court's decisions concerning access to judicial processes . . ., reflect both equal protection and due process concerns." *M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996) (citations omitted); *see also Ross v. Moffitt*, 417 U.S. 600, 608-09 (1974) ("The precise rationale for the *Griffin* and *Douglas* line of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of that Amendment."); *Bearden v. Georgia*, 461 U.S. 660, 665 (1983) ("Due process and equal protection principles converge in the Court's analysis in these cases.").

The court concludes Petitioner's citation to due process in his state appeal was sufficient to provide the state a fair opportunity to adjudicate the equal protection aspects of this claim, as well. In his state appeals, Petitioner framed the issue as one involving a denial of his appeal rights in violation of the Fourteenth Amendment. Although he only cited that Amendment's Due Process Clause, the intertwining of the Due Process and Equal Protection Clauses in the Supreme Court's treatment of this issue support the conclusion that any analysis of the due process claim required consideration of the equal protection guaranty as well. In addition, many of the state court cases cited by Petitioner in his appeal and petition for rehearing to the Appellate Court analyzed both equal protection as well as due process issues. (Defendant-Appellant's Petition for Rehearing, Ex. E to Respondent's Answer, at 8, citing *People v. Wright*, 311 Ill. App. 3d 1042, 725 N.E.2d 811 (5th Dist. 2000) ("If, however, a State creates appellate courts . . ., the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the

15

Constitution.") (citing *Evitts v. Lucey*, 469 U.S. 387, 393 (1985)).)

A petition need not cite "book and verse of the federal constitution" to fairly present a constitutional claim. *Verdin*, 972 F.2d at 1474 (quoting *Sullivan*, 731 F.2d at 453). Rather, a petition need only describe the "operative facts and legal theory" underlying the claim. *Verdin*, 972 F.2d at 1474 (citing *Picard*, 404 U.S. at 277-78). The court concludes Petitioner has satisfied this burden.

## II.    What is the Standard of Review?

Where both the due process and equal protection claims have been fairly presented to the state courts, this court is free to address those claims on their merits. Respondent asserts, however, that this is not free to decide the claim *de novo* because the Illinois Appellate court has already held that Petitioner effectuated a valid waiver of his appellate rights. As discussed above, for claims adjudicated on the merits in state court, a federal court will not grant habeas relief unless the state decision was contrary to established federal law or was based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d)(1), (2). Here, however, the Appellate Court did not explicitly discuss Petitioner's federal constitutional claims, either as a matter of equal protection or of due process. The court instead upheld the propriety of the waiver as a matter of state law. (Appellate Court Order, at 32, 36-37.)

Currently the federal circuits are split over whether a federal claim was "adjudicated on the merits" within the meaning of the AEDPA where it was considered and denied by the state courts without explicit reference to the federal constitutional aspects of that particular claim. *Compare, e.g., Hines v. Miller*, 318 F.3d 157, 160 (2d Cir. 2003) (The phrase "adjudication on the merits" requires "only that a claim be disposed of on the merits, as opposed to on a procedural or other ground, and . . . the state court need not refer to the federal claim or to federal law as a prerequisite to the deferential AEDPA standard. . . ."); *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th

16

Cir. 2000) ("Where a state court decides a constitutional issue by form order or without extended discussion, a habeas court should then focus on the result of the state court's decision, applying the standard articulated by the AEDPA.") *with Hameen v. State of Delaware*, 212 F.3d 226, 248 (3d Cir. 2000) (holding that the deferential post-AEDPA standard does not apply where the state court limited its review to a question of statutory construction and did not pass on the petitioner's constitutional claim). The Seventh Circuit has not yet considered the definition of "adjudicated on the merits," though it has given state court decisions on the merits much deference on habeas review: "If the [state court] determination was reasonable, that is, 'at least minimally consistent with the facts and circumstances of the case,' we shall uphold the state court ruling, even if it is not well reasoned or fully reasoned . . . ." *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999) (citations omitted).

In this case, where the Illinois Appellate Court did not directly address Petitioner's due process and equal protection claims, arguably no deference is required. This court need not decide the matter, however, because it concludes that Petitioner has not established a constitutional violation.

III.    **Did Petitioner Waive His Appellate Rights?**

It is well-settled law in the Seventh Circuit that defendants may waive their right to appeal as part of a plea agreement.[8] *United States v. Woolley*, 123 F.3d 627, 631 (7th Cir. 1997) (citations omitted). For such a waiver to be valid, however, it "must be express and unambiguous," *Woolley*, 123 F.3d at 632, quoting *United States v. Hendrickson*, 22 F.3d 170, 174 (7th Cir. 1994), and express a clear intent on behalf of the defendant to waive his right to appeal. *Hendrickson*, 22 F.3d

---

[8]        Petitioner seems to suggests that criminal defendants, even those who plead guilty, have a due process right to appeal their sentences. (Petitioner's Brief, at 17, citing *Rinaldi v. Yeager*, 384 U.S. 305 (1966).) To the extent Petitioner suggests that this right is absolute and not subject to waiver, he is mistaken. As discussed, a defendant's right to appeal may be waived as part of a plea agreement.

at 174. The record must demonstrate that the waiver was "made knowingly and voluntarily." *Woolley*, 123 F.3d at 632, quoting *United States v. Agee*, 83 F.3d 882, 885 (7th Cir. 1996).

In examining a purported waiver, a court will examine the "content and language of the plea agreement itself, as well as the colloquy where necessary . . . ." *United States v. Williams*, 184 F.3d 666, 668 (7th Cir. 1999) (citations omitted). During Petitioner's sentencing hearing, quoting the then-existing version of Illinois Supreme Court Rule 605(b), the court advised that he could *either* bring a motion to withdraw his plea *or* a motion to reconsider his sentence. (Trial Transcript, June 11, 1999, at 109-110.) When Petitioner asked the court to repeat his rights, the judge again stated that Petitioner could move to reconsider his sentence. (*Id.* at 110-15.) Nonetheless, prior to this incomplete admonition, the court had explained on a number of occasions that Petitioner could seek reconsideration of his sentence only if he withdrew from the negotiated guilty plea. The court referred specifically to the Illinois Supreme Court's rulings on this and the policy reasons for precluding review of a negotiated sentence:

> The Supreme Court said when there is an agreed plea, you're in no position to have the sentence reduced upon appeal to the appellate court. You're trying to get two bites - - have him plead guilty to something less, with the benefit of me giving a reduced sentence. Because, admitting his guilt you have taken advantage of not hearing all the witnesses, all the aggravating factors you might hear at the trial which could increase his sentence beyond twenty-five years.

(Trial Transcript, June 11, 1999, at 13.) Indeed, the trial court repeatedly expressed frustration at defense counsel's insistence on a sentencing hearing, questioning the purpose of such a hearing where the parties had already reached a negotiated plea agreement. Most important, the court twice expressly offered to allow Petitioner to withdraw his guilty plea and proceed to trial if he felt the sentence was inappropriate or too harsh. (Trial Transcript, June 11, 1999, at 10-18, 100-104.)

In his final admonitions to Petitioner, the judge twice incorrectly suggested that Petitioner would be free to move for reconsideration of his sentence without first moving to withdraw his plea. Viewing the record as a whole, however, the court is satisfied that Petitioner and his counsel were

18

fully alerted to the state restriction on appeals taken after entry into a negotiated guilty plea. In the

Seventh Circuit, "a specific dialogue with the judge is not a necessary prerequisite to a valid waiver

of appeal, if there is evidence in the record demonstrating a knowing and voluntary waiver." *United*

*States v. Agee*, 83 F.3d 882, 886 (7th Cir. 1996), citing *United States v. Wenger*, 58 F.3d 280, 282-

83 (7th Cir. 1995); *United States v. DeSantiago-Martinez*, 38 F.3d 394, 395 (9th Cir. 1992). Here,

the trial court's numerous warnings to defense counsel that Petitioner was not entitled to a

reconsideration of a sentence to which he had agreed, as well as its explicit reference to Illinois

case law to this effect, were sufficient to satisfy this court that Petitioner understood that any review

of his sentence would require him to withdraw his guilty plea. The court concludes that he

effectuated a knowing and valid waiver of his appellate rights.

       In any event, this waiver was not absolute. Despite the application of *Linder* and *Evans*,

Petitioner retained the opportunity to appeal his sentence; the cases only required that he first

move to withdraw his guilty plea. It was only after Petitioner refused to withdraw his plea that the

trial court denied his motion to reconsider. (Trial Transcript, Sept. 1, 1999, at 1-7.) Petitioner

claims that the Illinois courts have "vacated and remanded" the sentences of other defendants who

were similarly misinstructed as to their appellate rights before the Illinois Supreme Court amended

Rule 605(b). (Petitioner's Brief, at 16, citing *People v. Leahy*, 322 Ill. App. 3d 974, 751 N.E.2d 634

(4th Dist. 2001); *People v. Bates*, 323 Ill. App. 3d 77, 751 N.E.2d 180 (1st Dist. 2001), *overruled*

*on other grounds by People v. Jones*, 213 Ill. 2d 498, 821 N.E.2d 1093 (Ill. 2004); *People v. Wright*,

311 Ill. App. 3d 1042, 725 N.E.2d 811 (5th Dist. 2000).) As the court reads these cases, however,

the sentences were not vacated; in fact, the courts declined to review the sentences, choosing

instead to remand to allow the defendants, who had not been made aware of the requirement that

they withdraw their pleas, to be properly admonished and decide whether to do so. *See, e.g.,*

*Leahy*, 322 Ill. App. 3d at 977, 751 N.E.2d at 636-37; *Wright*, 311 Ill. App. 3d at 1048, 725 N.E.2d

at 815-16.[9]

Here, in contrast, Judge DeBoni expressly alerted Petitioner and his counsel to the Illinois Supreme Court cases imposing the requirement and warned that the cases required a defendant pleading guilty to a negotiated plea to file both "a motion to reconsider, *and* a motion to withdraw the guilty plea." (Trial Transcript, May 7, 1999, at 9-11.) Significantly, Petitioner does not even now seek the opportunity to withdraw his guilty plea. He has had numerous opportunities to do so and has consistently declined. Instead, Petitioner seeks to obtain appellate review of his sentence without first moving to withdraw his guilty plea; in essence, he seeks to proceed under the incorrect Rule 605(b) formulation. Neither due process nor the cases cited by Petitioner support such an outcome.

Petitioner had an opportunity to appeal his sentence, by first moving to withdraw his guilty plea, but did not to do so. Having made that decision, Petitioner cannot now complain that he has been denied procedural due process or equal protection.

## IV. Excessive Sentence

Petitioner claims that his sentence is unconstitutionally excessive and violates the Fourteenth Amendment's Equal Protection Clause. Specifically, Petitioner argues that his sentence grossly exceeds the average and mean sentences for persons convicted of armed robbery despite numerous mitigating factors and despite the fact that his crimes were less egregious than the "average" armed robbery in Illinois. Given what he sees as a failure of the trial court to articulate the rationale behind the lengthy sentence (to which Petitioner himself agreed), Petitioner attributes it to racial animus.

---

[9]     In discussing these cases, the Illinois Supreme Court noted that "[d]ue process does not require that a defendant be admonished of the right to appeal," but held that "fundamental fairness required remand for accurate admonishments" in cases where the defendant had not been properly instructed as to the procedures for preserving his appellate rights. *People v. Breedlove*, 213 Ill. 2d 509, 516, 521, 821 N.E.2d 1176, 1181, 1184 (2004).

Respondent urges that because the Appellate Court's rejection of Petitioner's equal protection claim rests on independent and adequate state grounds, this court may not reach the merits of the claims. Under the independent and adequate state ground doctrine, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributed thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted). As explained earlier, the Illinois Appellate Court refused to consider Petitioner's appeal based on state law requiring criminal defendants who plead guilty as part of a negotiated plea agreement to first move to withdraw their guilty plea before bringing a motion to appeal their sentence. (Appellate Court Order, at 32-33.) As Respondent correctly notes, state waiver rules have been held to function as an independent and adequate state rule resulting in procedural default. *See, e.g., Coleman v. Thompson*, 501 U.S. 722 (1991).

Petitioner does not argue cause or prejudice here. Instead, he argues that the Appellate Court's refusal to hear his equal protection claim does not represent an independent and adequate state ground because the constitutionality of the state procedural ground is itself being challenged. To allow the state waiver rule to prevent review of the constitutionality of his purported waiver would be, in Petitioner's words, "a triumph of circular and pernicious reasoning." (Petitioner's Reply Brief, at 3.) This argument has lost its strength, however, now that this court has reviewed Petitioner's due process waiver claim and found it to be without merit. Its constitutionality affirmed, the state waiver rule now serves as an independent and adequate state ground barring federal habeas review of Petitioner's equal protection challenge to his sentence.

In any event, even if the court were to reach the equal protection claim, the court has grave doubts concerning its merit. A defendant alleging an equal protection violation "has the burden of

21

proving 'the existence of purposeful discrimination.'" *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967). A criminal defendant must demonstrate that the discrimination had an effect on his case; in other words, "he must prove that the decisionmakers in *his* case acted with discriminatory purpose." *Id.* at 292-93 (emphasis in original). Moreover, "[b]ecause discretion is essential to the criminal justice process," the Supreme Court has demanded "exceptionally clear proof" before inferring that such discretion has been abused. *Id.* at 297.

Petitioner has offered statistical evidence which he claims demonstrates that his sentence is disproportionate to those given to white defendants convicted of armed robbery. In support, he cites a study conducted by the Illinois Department of Corrections showing defendants convicted of armed robbery in Illinois in 1997 received a mean sentence of 12.4 years and an average sentence of 10 years. (App. to Petitioner's Brief, at 195.) Another study in the Fourth District of the Cook County Circuit Court between 1997 and 1999 revealed that the average sentence for armed robbery in the court was 10.66 years, and that no one had received a sentence as long as Petitioner's. (*Id.* at 196-97.) A 1995 study conducted by the United States Department of Justice showed the nationwide average sentence for armed robbery to be 7.91 years, and 7.41 years for all violent crimes. (*Id.* at 289.) None of these studies identified the race of the defendants involved.

Petitioner looked also at eight armed robbery cases[10] where Judge DeBoni presided; Petitioner asserts that where both defendant and victim were African American, the average sentence was just 10.66 years, while in cases involving an African American defendant and a white victim resulted in average sentences of just 17.5 years.[11] (Petitioner's Brief, at 21, citing App. to

---

[10]     Although Petitioner states that the study identified eight armed robbery cases over which Judge DeBoni presided, the study submitted to the court only shows five such cases. (App. to Petitioner's Brief, at 196-97.)

[11]     Petitioner derived this information from court records obtained from the Clerk of the
(continued...)

22

Petitioner's Brief, at 196-97.) As far as the court can tell, however, this study includes no cases involving white defendants, nor does it include any in which the victim was over 60 years old. It should also be noted that all five of the cases submitted to the court involved plea bargains. (*Id.*)

In addition to the statistical studies, Petitioner cites a handful of cases in which the Illinois appellate courts have sentenced armed robbers to shorter sentences despite seemingly more heinous circumstances or reduced a sentence on appeal in light of mitigating circumstances similar to those presented by Petitioner. (Section 2254 Petition, at 13-14.) A mere recitation of facts surrounding different criminal acts is an insufficient basis for a determination of whether one case is necessarily more egregious than another, however. On habeas review, this court has no access to the state trial judge's state of mind when sentencing Petitioner, but notes that Petitioner's addressed assertion that the judge offered "no meaningful explanation" for the sentence is incorrect. (Petitioner's Brief, at 21.) To the contrary, at the sentencing hearing, the judge addressed the aggravating factors justifying the long sentence, noting specifically the age of the victim and his conclusion that Petitioner remained a "risk to society." (Trial Transcript, June 11, 1999, at 104-08.)

Petitioner himself has not cited a single case in which a criminal sentence was vacated on the grounds that the trial judge's imposition of the sentence was racially discriminatory in violation of the Equal Protection Clause. The only such cases this court has located involved some overt evidence of discrimination. *See, e.g., United States v. Leung*, 40 F.3d 577 (2d Cir. 1994) (vacating sentence due to comments made during sentencing hearing indicating that the judge was motivated, in part, by defendant's ethnicity and nationality). Nor has the court seen any case in

---

[11](...continued)
Circuit Court of Cook County identifying the names, case numbers, dispositions, and docket sheets for all armed robbery cases handled by the Fourth District of the Cook County Circuit Court in Maywood, Illinois from 1996 through 2000. (Petitioner's Brief, at 21.) Judge DeBoni's cases were identified from the docket sheet. Petitioner does not explain how he determined the race of the perpetrators and victims of these crimes; the records do not appear to reflect this information.

which statistical evidence of discrimination was relied on as the basis for overturning a criminal sentence on equal protection grounds.

Even if statistical evidence alone were sufficient, Petitioner has not, in this court's view, offered statistical proof necessary to support a finding of discrimination. Although it has accepted statistics as proof of intent to discriminate in certain circumstances, the Supreme Court has been unwilling to consider statistical evidence in situations where decisions are made by multiple actors. *McCleskey*, 481 U.S. at 294-96. Thus, outside of jury venire-selection and Title VII cases,[12] statistical evidence must present a "stark" pattern to stand alone as proof of discriminatory intent. *Id.* at 293 (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977)).

Petitioner has not established a pattern of racial discriminatory sentencing by the Illinois courts, the Cook County Circuit Court, or Judge DeBoni. Regarding the judge, Petitioner points to a mere handful of armed robbery convictions, and notes that his sentence is the longest of the bunch. (Petitioner's Brief, at 21, citing App. to Petitioner's Brief, at 196.) Moreover, the larger studies he cites, conducted by the Illinois Department of Corrections and U.S. Department of Justice, do not consider race as a sentencing variable. Without formally deciding the matter, the court observes that Petitioner's cursory analysis of a handful of armed robbery cases in Illinois and his unsupported conclusion that his case "is less egregious than these defendants and certainly less egregious than the 'average' armed robber in Illinois" is an insufficient basis for a conclusion that the length of his sentence was the product of intentional racial discrimination. (Section 2254 Petition, at 14.)

---

[12]     The Court distinguished these cases by noting that "the application of an inference drawn from the general statistics to a specific decision in a trial and sentencing is simply not comparable to the application of an inference drawn from general statistics to a specific venire-selection or Title VII case [because] in those cases, the statistics relate to fewer entities, and fewer variables are relevant to the challenged decisions." *Id.* at 294-95.

24

## CONCLUSION

The petition for writ of habeas corpus is denied.

ENTER:

Dated: May 10, 2005

REBECCA R. PALLMEYER
United States District Judge

25